## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

# FILED

JAN **0 4** 2013

, **Phil Lombardi, Clerk**
**U.S. DISTRICT COURT**

(1) PHILIP C. CHAPPELLE, )
)
Plaintiff, )
vs. )
)
(2) MATRIX SERVICE INC., an Oklahoma )
Corporation; (3) MATRIX   SERVICE )
COMPANY, a Delaware Corporation; )
(4) NANCY ELIZABETH (DOWNS) AUSTIN, )
an individual resident of the State of )
Oklahoma and (5) THOMAS E. LONG, an )
individual resident of the State of Oklahoma, )
George (6) Les Austin an individual of the State )
of the Oklahoma Residents )
Defendants. )

Case No. **13 CV 14**- ~~JED~~-FHM

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

### COMPLAINT

COMES NOW Philip C. Chappelle ("Plaintiff"), pro-se, and for his causes of action against

Matrix Service Inc. ("MSI"), Matrix Service Company ("MSC") (hereinafter collectively

referred to as "Matrix"), Nancy Downs Austin ("Nancy Austin"), George Austin ("Les Austin"),

and Thomas E. Long ( "Long") alleges and states as follows:

### JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §451, 1331, and 1343. This

   action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964,

   as amended, 42 U.S.C. §2000e et seq., and the Civil Rights Act of 1991, 42 U.S.C.

   §1981.



2.   This Court has supplemental jurisdiction for all other claims under 28 U.S.C. §1367(a).

3.   The employment practices and conduct alleged to be unlawful and set forth in this Complaint were committed within the jurisdiction of the United States District Court for the Northern District of Oklahoma.

## PARTIES

4.   Plaintiff, an individual, is a citizen of the United States of America and a resident of Tulsa County, Oklahoma.

5.   MSI is a corporation organized and existing under the laws of the State of Oklahoma. MSC is a Delaware corporation doing business within Tulsa County Oklahoma. Matrix is an "employer" and a "covered entity" within the meaning of the relevant statutes and conducts business in Tulsa County Oklahoma.

6.   Nancy Austin is an individual citizen of the United States and resident of Tulsa County Oklahoma. Nancy Austin is an executive officer of MSC and MSI and at all times relevant herein, served as the Vice-President of Human Resources for Matrix. In May, 2008, Nancy Austin became the wife of Les Austin.

7.   Les Austin is an individual citizen of the United States and resident of Tulsa County Oklahoma. Les Austin was an executive officer of MSC and MSI and served as the Vice-President of Finance and Chief Financial Officer of Matrix. At all relevant times prior to his departure from Matrix in or about March, 2008, Les Austin served as the direct supervisor of Plaintiff.

8.   Long is an individual citizen of the United States and resident of Tulsa County Oklahoma. Since May 2008, Long has served as Vice-President and Chief Financial Officer of Matrix as well as the direct supervisor of Plaintiff.

## PROCEDURAL HISTORY

9.   Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity
     Commission ("EEOC"), against Matrix, alleging among other things, discrimination and
     retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.
     ("ADA").

10.   Plaintiff is a "qualified individual with a disability" as defined in the ADA.

11.   On October 28, 2009, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint
     is filed within ninety (90) days of Plaintiff's receipt of that Notice.   As such, all
     conditions precedent to the filing of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

12.   Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-11 above as if
     fully set forth herein.

13.   Plaintiff was hired by Matrix in May, 1990 as Director of Safety.  Plaintiff became an
     officer for Matrix in 1997.   During his employment with Matrix, Plaintiff was
     consistently a high performing employee. Matrix recognized Plaintiff's outstanding
     performance and provided him with numerous advancements in positions and
     responsibilities, including to the position of Vice-President with responsibilities for
     various corporate areas such as risk management and legal affairs.

14.   In January of 2006, Plaintiff was involved in an equestrian accident, and suffered severe
     injuries to his head and brain.   Plaintiff notified Defendants of his injuries and
     Defendants were aware of Plaintiff's accident and the severity of his injuries. From the
     date of the accident throughout the duration of Plaintiff's employment with Matrix, the
     disabling impact of the injuries Plaintiff sustained were viewed by Defendants as a

negative and determining factor in decisions regarding his employment. For example, shortly after the accident, Nancy Austin made a comment to the effect of Plaintiff "doesn't seem right."

15. As a result of the accident, Plaintiff suffered from and was diagnosed with having traumatic brain injury ("TBI") and post concussive syndrome ("PCS"). These conditions adversely impacted Plaintiff's frontal lobe function. These conditions evolved and varied in their severity and occurrence during the months and years following the accident. These conditions adversely impacted, among other things, Plaintiff's short-term, his working memory functions, his executive function, his sensitivity to light and noise, his sleep and resulted in additional side-effects due to the medication Plaintiff took as a result of these conditions. The conditions suffered by Plaintiff as a result of the accident substantially impaired his ability to perform and engage in daily life activities.

16. Commencing in March 2006 and continuing thereafter, Plaintiff notified Defendants of his medical health condition and its substantial impact upon his daily life activities. For example, in March 2006, Plaintiff notified Matrix of the instructions from his neurosurgeon that Plaintiff take time off from work to recover from his injuries.

17. Following directions from his physician, Plaintiff requested Matrix grant him time off from work. Matrix, by and through Les Austin and Nancy Austin, however, required Plaintiff to perform certain tasks prior to permitting him to take time off work. These requirements from Matrix, issued by its agents Les Austin and Nancy Austin, were in direct contravention of the medical advice of Plaintiff's physician. Moreover, the tasks Matrix required Plaintiff to perform included three cognitively challenging assignments - reorganization of the Plaintiff's department; preparation and submission of the fiscal year

2007 budget for his department; and preparation of a voluminous report for the April 2006 meeting of Matrix's Board of Directors.

18.     The job related demands made by Matrix, Les Austin and Nancy Austin as summarized above were knowingly made by Matrix contrary to the medical needs of Plaintiff.  These demands interfered with Plaintiff's prescribed course of medical treatment and exacerbated the injurious effect of Plaintiff's traumatic brain injury.

19.     Subsequently, in or about August 2006, Les Austin informed Plaintiff that he would be conducting quarterly reviews of Plaintiff as well as all of his other direct reports. Plaintiff was told by Les Austin that he did not need to prepare for the quarterly review.  Plaintiff was the first and only individual of whom Les Austin conducted a quarterly review.  In fact, this quarterly performance review was the first time in the 17 year history of Plaintiff's employment with Matrix that Plaintiff received and/or underwent a quarterly review.  None of the other six (6) employees that reported directly to Les Austin were required to undergo a similar quarterly review. Moreover, just two months earlier, in June 2006, Plaintiff received his annual review in which he was rated as above average and received a raise in pay based upon the high quality of his work performance.

20.     Matrix, by and through Les Austin and Nancy Austin, constructed this quarterly review process as a thinly-veiled guise to "paper" Plaintiff's personnel file with negative information at a time when Matrix knew of the physical, medical and neurological conditions adversely impacting Plaintiff.

21.     In September of 2006, Matrix, by and through Les Austin and Nancy Austin, required Plaintiff to undergo psychological testing.  As a part of the testing ordered by Matrix, Plaintiff was required to provide Matrix with confidential medical information in the

form of a letter from his physician detailing Plaintiff's medical condition and his ability to work. During this time, Matrix allowed Plaintiff to work from home. Matrix made representations to Plaintiff that it was preparing a long term plan to accommodate Plaintiff's condition.

22.     Contrary to these promises and representations, on or about October 12, 2006, Matrix sent Plaintiff a letter placing him on involuntary family and medical leave. The letter warned Plaintiff that he must return to work within twelve (12) weeks. According to Matrix, if Plaintiff failed to return to work within this twelve (12) week time period and provide Matrix a letter from his physician confirming his ability to return to work, Plaintiff's employment with Matrix would be terminated. Plaintiff learned that during his company mandated absence from work, Les Austin and Nancy Austin sought and obtained advice from legal counsel concerning a plan for the termination of Plaintiff's employment.

23.     During this same time period, Matrix invaded Plaintiff's privacy and damaged his reputation by notifying persons outside of Matrix that Plaintiff suffered from brain injuries. Matrix disclosed Plaintiff's medical information to individuals outside of Matrix with whom the Plaintiff dealt with on a regular basis for business purposes. These disclosures by Matrix were done to make Plaintiff's working conditions at the company intolerable and to damage Plaintiff's good reputation.

24.     Matrix, without Plaintiff's authorization, also disclosed his private health and medical information to various co-workers of Plaintiff. These improper disclosures of Plaintiff's private medical and health information were not done for any legitimate business purpose, but instead were part of an orchestrated plan of Matrix to create and promote a

hostile work environment filled with gossip, rumor and innuendo against Plaintiff and to make Plaintiff's work environment intolerable.

25.    On or about January 3, 2007, Plaintiff attempted to return to work. At that time, Plaintiff was instructed by Nancy Austin that he should take another week off because she needed addition time to meet and discuss with Les Austin the issues of Plaintiff's employment and return to work.

26.    On or about January 15, 2007, Matrix unilaterally changed Plaintiff's job duties and responsibilities because of his disability. Matrix, by and through Nancy Austin and Les Austin, advised Plaintiff that he was no longer in charge of the legal affairs of Matrix, a role he had fulfilled for the last 17 years. Matrix notified Plaintiff that he would instead be in charge of procurement improvement, a position for which Plaintiff had no knowledge, skill, or training. Matrix did not offer Plaintiff any training which would enable him to perform these newly assigned job responsibilities. In essence, not only did Matrix take away Plaintiff's job responsibilities and duties without knowing whether he could continue to perform those responsibilities and duties with or without accommodations, but Matrix, by and through its agents and executives Les Austin and Nancy Austin, arbitrarily and unilaterally assigned Plaintiff job responsibilities and duties which Matrix knew Plaintiff did not have the background, training or experience to perform. These actions were taken as part of Matrix's scheme to impose job duties and responsibilities upon Plaintiff that Matrix believed he would not successfully perform so that Matrix could later justify the termination of his employment.

27.    In or about November 2007, Plaintiff informed Matrix of the issues that he was experiencing in the performance of the job duties and responsibilities that Matrix had

imposed upon him.  In response, Matrix represented to Plaintiff that it would generate a modified job description for him wherein he could work from home with his primary responsibility being the acquisition of insurance.

28.  On or about February 21, 2008, Plaintiff and Matrix entered into an "Agreement" whereby the terms of Plaintiff's employment, including the structure of compensation to be paid Plaintiff, were laid out in detail.  Pursuant to the Agreement, Plaintiff agreed to relinquish his position, along which certain benefits and privileges and accept a new role with Matrix as Executive Advisor – Risk Management.  The Agreement provides for the employment and compensation of Plaintiff at least through fiscal year ending 2015.  The Agreement does not contain any provision for Matrix's termination of either the Agreement or Plaintiff's employment.   The only basis upon which the Agreement provides for termination is in the event of Plaintiff's death or Plaintiff's election to resign because of disability or normal retirement.

29.  Although the Agreement required that Matrix treat its existence, terms and contents as confidential, Matrix disclosed and provided access to the Agreement to third parties.  Thereafter, Plaintiff was berated, harassed, discriminated against, chastised, and belittled as a result of his disability.  Commencing in October of 2008, Plaintiff complained to Matrix, including to Nancy Austin and to Long (who by this time had replaced Les Austin as Chief Financial Officer and Plaintiff's direct supervisor) about the continued harassment and discrimination.  In conjunction with reporting the continued harassment and discrimination, Plaintiff requested a meeting with Long and Nancy Austin for the purpose of further detailing his complaints and addressing the discriminatory and retaliatory work environment.  Matrix initially refused to address Plaintiff's complaints,

but as a result of his persistence in reporting the discrimination and retaliation, Matrix finally scheduled a meeting with Plaintiff in December, 2008.

30.   At the commencement of the December 12, 2008 meeting, rather than address the complaints Plaintiff raised about Matrix's ongoing discrimination and retaliation, Matrix, by and through Long and Nancy Austin, abruptly informed Plaintiff that his position with Matrix was eliminated and that Matrix was terminating his employment.   The pre-text that Matrix manufactured for its termination of Plaintiff was a "reduction in force." Matrix, however, did not implement a reduction in force and provided absolutely no legitimate reason for its decision to terminate Plaintiff's employment.

31.   Following termination, Matrix failed to pay Plaintiff the wages, compensation and bonuses he earned and was entitled to receive as a result of his employment with the company.

**First Claim for Relief Against MSC and MSI**
**(Discrimination in Violation of the ADA)**

32.   Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-31 above as if fully set forth herein.

33.   All conditions precedent to the institution of this lawsuit has been fulfilled.

34.   Plaintiff is a qualified individual with a disability as defined by the ADA.

35.   Matrix is an employer and covered entity within the meaning of the ADA.

36.   Since the accident in 2006, Matrix has engaged in unlawful employment practices at its Tulsa, Oklahoma location in violation of the ADA.  Matrix's conduct and communication in discriminating against Plaintiff because of his disability has deprived Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee of

Matrix. Matrix knowingly ignored Plaintiff's medical needs by requiring him to perform tasks at a time when his traumatic brain injury required healing time.

37. Matrix's unlawful employment practices were intentional and done with malice and with reckless indifference to the protected rights of Plaintiff.

38. As a result of Matrix's unlawful conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

## Second Claim for Relief Against MSC and MSI
## (Retaliation in Violation of the ADA)

39. Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-38 above as if fully set forth herein.

40. As a result of Matrix's intentional and malicious discrimination, Plaintiff engaged in protected activities under the ADA, including opposing Matrix's unlawful employment practices, complaining to Matrix about the discrimination and repeated harassment he endured during his employment and attempting to obtain equal employment opportunity for himself.

41. In a meeting scheduled for the purpose of addressing these complaints, Matrix refused to discuss or address the issues Plaintiff had raised regarding discrimination and harassment. Instead, consistent with the animosity and harassment Plaintiff experienced from Matrix since his accident, Matrix abruptly and without any justification terminated Plaintiff's employment.

42. Matrix's termination of Plaintiff was in retaliation for Plaintiff's engaging in protected activity under the ADA and exercising his rights under the ADA and in further violation of the provisions of the ADA. Matrix's conduct and communication in retaliating against

Plaintiff has deprived him of equal employment opportunities, were intentional and done with malice and reckless indifference to the protected rights of Plaintiff.

43.   As a result of Matrix's unlawful conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

**Third Claim for Relief Against MSC and MSI**
**(Breach of Contract)**

44.   Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-43 above as if fully set forth herein.

45.   Matrix breached its contract with Plaintiff by failing to fulfill its obligations under the Agreement. Matrix altered the role and expectations provisions of the Agreement without the consent of Plaintiff.

46.   Matrix breached the Agreement by termination of Plaintiff's employment.

47.   Matrix breached the Agreement by refusing and failing to pay the compensation and benefits provided to Plaintiff under the Agreement through the end of fiscal year 2015.

48.   Matrix breached the Agreement by refusing and failing to pay to Plaintiff the compensation he earned prior to Matrix's termination of his employment.

49.   Matrix breached the Agreement by wrongfully disclosing the contents of the Agreement, including Plaintiff's confidential medical and health information, to individuals who were not authorized by the Agreement to receive the information.

50.   As a result of Matrix's conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

**Fourth Claim for Relief Against MSC and MSI**
**(Violation of Protection of Labor Act)**

51.  Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-50 above as if fully set forth herein.

52.  The Agreement provides for Matrix to pay Plaintiff compensation and bonuses for services performed for the company.

53.  Matrix has refused and failed to pay Plaintiff the compensation, bonuses and wages he earned during his employment with the company.

54.  After Matrix's termination of his employment, Plaintiff requested Matrix pay him the compensation, bonuses and wages he earned and was entitled to receive for services performed for the company.  Matrix again denied Plaintiff's request for payment of his wages, compensation and bonuses.

55.  Matrix's conduct is in violation of Protection of Labor provisions of Okla. Stat. Tit. 40 §165.1 et seq.

56.  As a result of Matrix's unlawful conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

**Fifth Claim for Relief Against MSC and MSI**
**(Invasion of Privacy)**

57.  Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-56 above as if fully set forth herein.

58.  By disclosing the medical information of the Plaintiff, provided to Matrix as a result of a confidential employment related medical claim, Matrix improperly published and disclosed the private medical facts of Plaintiff in such a manner and for a purpose that was/is highly offensive and was not for any legitimate purpose.

59.     As a result of Matrix's unlawful conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

**Sixth Claim for Relief Against MSC and MSI**
**(Intentional Inflection of Emotional Distress)**

60.     Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-60 above as if fully set forth herein.

61.     Matrix's termination of the Plaintiff, as a result of Plaintiff's disability, constitutes an intentional and/or reckless act which qualifies as extreme and outrageous.

62.     Matrix's improper termination of Plaintiff, as a result of Plaintiff's disability, caused Plaintiff to suffer from significant neurological and emotional distress. The neurological and emotional distress suffered by Plaintiff was, and continues to be, severe in nature.

63.     As a result of Matrix's unlawful conduct, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

**Seventh Claim for Relief Against Nancy Austin, Les Austin and Long**
**(Tortious Interference with Employment Relationship)**

64.     Plaintiff incorporates, adopts and re-alleges allegations of paragraphs 1-63 above as if fully set forth herein.

65.     Plaintiff had a contract of employment with Matrix.

66.     Long, Les Austin and Nancy Austin knew of the existence of the contract establishing the employment relationship between Plaintiff and Matrix.

67.     Long, Les Austin and Nancy Austin improperly interfered with Plaintiff's employment relationship with Matrix and induced Matrix to terminate the employment relationship.

13

68.    The conduct and communications of Long, Les Austin and Nancy Austin were intentional and were accomplished through improper, unlawful and unfair means, including the discrimination and retaliation against Plaintiff.

69.    As a result of the unlawful conduct and communication of Long, Les Austin and Nancy Austin, Plaintiff has been damaged and seeks the Relief set forth in the Prayer for Relief set forth in this Complaint.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the following relief and recovery against Matrix:

70.    As to the First Claim, Plaintiff is entitled to:

A.    Be made whole by Matrix paying him appropriate back pay with prejudgment interest in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement to employment.

B.    Be made whole by Matrix paying to him compensation for past and future pecuniary losses resulting from its unlawful employment practices in amounts to be determined at trial.

C.    Be made whole by Matrix paying to him compensation for past and future non-pecuniary losses resulting from Matrix's unlawful employment practices including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation, in amounts to be determined at trial.

14

D.     An award of punitive damages paid to Plaintiff by Matrix in an amount sufficient to both punish Matrix for its discriminatory behavior and to encourage Matrix not to engage in this type of behavior in the future.

E.     Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

71.    As to the Second Claim, Plaintiff is entitled to:

A.     Be made whole by Matrix paying him appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief as necessary to eradicate the effects of its unlawful employment practices, including but not limited to, reinstatement to employment.

B.     Be made whole by Matrix paying to him compensation for past and future pecuniary losses resulting from its unlawful employment practices in amounts to be determined at trial.

C.     Be made whole by Matrix paying to him compensation for past and future non-pecuniary losses resulting from Matrix's unlawful employment practices including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation, in amounts to be determined at trial.

D.     An award of punitive damages paid to Plaintiff by Matrix in an amount sufficient to both punish Matrix for its discriminatory behavior and to encourage Matrix not to engage in this type of behavior in the future.

15

E.     Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

72.    With respect to the Third Claim, Plaintiff is entitled to:

A.     Recover from Matrix for breach of the Agreement the amount necessary to make Plaintiff whole by paying him the compensation, bonuses, wages and benefits set forth in the Agreement from the date of Matrix's breach of the Agreement through the date of the judgment and award is entered in favor Plaintiff.

B.     Recover from Matrix for breach of the Agreement the amount necessary to make Plaintiff whole by paying him the compensation, bonuses, wages and benefits set forth in the Agreement from the date of the judgment and award is entered in favor of Plaintiff through the end of Matrix's fiscal year 2015.

C.     Recover from Matrix for breach of the Agreement the amount necessary to make Plaintiff whole and to compensate Plaintiff for Matrix's breach of the confidentiality provisions of the Agreement which amount shall be determined at trial.

D.     Recover all other equitable and affirmative relief for damages sustained by Plaintiff arising out of or relating to Matrix's breach of the Agreement.

E.     Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

73.    With respect to the Fourth Claim, Plaintiff is entitled to:

A.   Recover from Matrix, as provided by 40 Okla. Stat. §165.3, all wages, compensation and bonuses which Plaintiff has earned but has not yet received.

B.   Recover from Matrix liquidated damages equating to 2% of the unpaid wages, compensation and bonuses for each day after the Plaintiff first earned the wages, compensation and bonuses and continuing until the date Matrix delivers the earned wages, compensation and bonuses to Plaintiff.

C.   Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

74.   With respect to Fifth Claim, Plaintiff is entitled to:

A.   Recover from Matrix economic damages suffered by the Plaintiff as a result of the intentional and/or reckless revelation of the private medical information of the Plaintiff by Matrix.

B.   Recover from Matrix an amount sufficient to compensate Plaintiff for all non-economic damages which includes, but is not necessarily limited to, compensation for pain, suffering and mental distress.

C.   Receive an award of punitive damages assessed against Matrix for its willful and/or reckless disclosure of Plaintiff's private health and medical information.

D.   Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

75.   With respect to Sixth Claim, Plaintiff is entitled to:

A.    Recover from Matrix the amount necessary to compensate Plaintiff for the emotional distress, physical discomfort, inconveniences, physical illness, injury, reasonable medical expenses, loss of reputation, and loss of earnings suffered by Plaintiff as a result of the tortious behavior.

B.    Receive an award of punitive damages assessed against Matrix in an amount sufficient to punish Matrix for its intentional tortious behavior.

C.    Recover from Matrix Plaintiff's attorney's fees and costs related to the Plaintiff's prosecution of this action and such other relief as this Court and the jury shall deem just and proper.

76.    With respect to Seventh Claim, Plaintiff is entitled to:

A.    Recover from Defendants Long, Nancy Austin and Les Austin, jointly and severally, an amount of damages necessary to make Plaintiff whole, including by providing him with the benefit of his Agreement such as appropriate back pay with prejudgment interest, front pay and further amounts to be determined at trial.

B.    Recover from Defendants Long, Nancy Austin and Les Austin, jointly and severally, an amount of damages necessary to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from their tortious conduct, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation, in amounts to be determined at trial.

C.    Receive an award of punitive damages assessed against Defendants Long, Nancy Austin and Les Austin, jointly and severally, in an amount sufficient to punish

them for their tortious conduct and in an amount sufficient to discourage them from engaging in this type of behavior in the future.

D.     Recover from the Defendants, Long, Nancy Austin, and Les Austin, Plaintiff's attorney's fees and costs related to the Plaintiff's Prosecution of this action and such other relief as the Court and the jury shall deem just and proper.


Respectfully Submitted,




By: _____

Philip C. Chappelle, Pro Se Plaintiff
10215 E 98th St
Tulsa OK 74133
(918) 625-9146